IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW and WENDY PATE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:22-cv-713-K |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

### **MEMORANDUM OPINION AND ORDER**[1]

Defendant State Farm Lloyds has filed an Opposed Motion to Strike Plaintiffs' Retained Testifying Expert, Michael Ogden, *see* Dkt. No. 30 (the "Ogden Motion"), "urg[ing] this Court to strike Plaintiff's retained, testifying Expert, Michael Ogden because Ogden's Investigation and Report fails to follow the methodology contained within his own report in order to put forth a results-driven and demonstrably inaccurate expert report, and is therefore, unreliable," *id.* at 3.

Plaintiffs Matthew and Wendy Pate filed a response, *see* Dkt. No. 31, and State Farm filed a reply, *see* Dkt. No. 35.

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

United States District Judge Ed Kinkeade has referred the Ogden Motion to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 51; *see also Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be "'referred to a magistrate judge to hear and decide'" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

For the reasons explained below, the Court grants in part and denies in part Defendant State Farm Lloyds's Opposed Motion to Strike Plaintiffs' Retained Testifying Expert, Michael Ogden [Dkt. No. 30].

## Legal Standards

As another judge in this district recently laid out,

> Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp.

3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can

be mastered only by specialists in the field." *Holcombe*, 516 F. Supp. 3d at 679-80 (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up); *accord Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. CIV.A. 06-4262, 2009 WL 2356292, at *1 (E.D. La. July 28, 2009) ("[T]he Court must determine whether the expert's reasoning or methodology 'fits' the facts of the case and whether it will thereby assist the trier of fact to understand the evidence, in other words, whether it is relevant." (cleaned up)).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up).

"Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony

that is connected to existing data only by the ipse dixit [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up); *accord Imperial Trading*, 2009 WL 2356292, at *1 ("The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation." (cleaned up)).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 807-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and based his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming

an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up).

"In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain

why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up).

And "[t]he expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up).

"The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). The United States Court of Appeals for the "Fifth Circuit has recognized that [t]he *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's opinion,'" and "an opinion based on insufficient, erroneous information, fails the reliability standard." *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up).

And, "[e]ven when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the

-9-

role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

Neither can the Court accept arguments that "urge[] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

"But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert

testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up). And, generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Id.* at 675 (cleaned up).

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up).

And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that

-11-

opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up).

## Analysis

As explained above, the Court should not, in its gatekeeping role under Rule 702 and *Daubert*, exclude a proffered expert witness's opinion or testimony because (1) it is not correct; (2) it contradicts other expert testimony or relies on a sets of facts that conflicts with that relied on by contradictory expert testimony, even if that contradictory expert testimony has been found to be reliable; or (3) it does not conclusively prove the proponent's theory of its case or an element of a claim or defense.

But the party offering the expert testimony bears the burden of proof, by a preponderance of evidence, to show that a qualified expert's testimony is relevant (that is, the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, and the expert's reasoning or methodology properly can be applied to the facts in issue) and reliable (that is, the testimony is based on sufficient facts or data and is the product of reliable principles and methods).

The Court should exclude expert testimony where (1) the expert cannot bring to the jury, on a matter of relevance, more than the lawyers can offer in argument; (2) the expert testimony is based only on subjective belief or unsupported speculation or is connected to existing data only by the unproven assertion of the expert, resting solely on the expert's authority; (3) there is simply too great an analytical gap between the basis for the expert opinion and the opinion proffered (such as if the studies that the expert relies on are so dissimilar to the facts presented that the expert's opinions cannot be sufficiently supported by the studies); (4) the expert testimony is based on indisputably wrong or erroneous or insufficient facts; (5) the proponent fails to provide some objective, independent validation of the expert's methodology; (6) the source on which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion; or (7) the expert relies on assumptions that have no factual basis in the record or no underlying rationale.

### I.     Mr. Ogden's Alleged Failure to Follow His Own Methodology

In its Ogden Motion, State Farm first explains that

> [t]his is an insurance coverage dispute arising out of a claim (the "Claim") Plaintiffs submitted to State Farm under their homeowners insurance policy (the "Policy") seeking coverage for damages to their residential property that allegedly resulted from a storm on or about March 25, 2021. Plaintiffs primarily contend that State Farm did not pay the full extent of the Policy benefits that they allege were owed on the Claim. Plaintiffs instituted this lawsuit against State Farm and allege causes of action for breach of contract and violations of Chapter 542 of the Texas Insurance Code.

Dkt. No. 30 at 1-2.

State Farm then asserts that "the Court should strike the opinions and testimony of Michael Ogden because they are unreliable." *Id.* at 3. State Farm contends that,

> [i]n his expert report, Mr. Ogden lays out a methodology he allegedly followed when examining the Plaintiff's roof titled "Protocol and Methodology for Hail and Wind Inspections." As part of his methodology, Mr. Ogden's report states the following:
> - "For asphalt shingled roofs, hail damage typically consists of radial/circular areas of granule loss, which constitute direct physical loss and functional damage[.]" (emphasis added)
> - "The severity and extent of hail damage to asphalt shingled roofs is not as visually apparent as compared with some other high-slope roofing materials, such as metal panels[.]"
> - "In addition to evaluating the roof, the exterior of the structure should also be evaluated for distress and damages … [a]ny evidence of distress, such as burnish marks or indentations in metal materials, should be documented. Additionally, exposed condenser coil fins at air conditioning units are susceptible to impact damage and should be evaluated."
> - "Care should be taken to ensure that the impact damage is consistent with hail. Granule loss on roof coverings can occur from hail impacts; however, granule loss in and of itself does not prove hail damage. Granule loss can also be the result of material and/or installation defects, natural weathering, foot traffic from maintenance, and miscellaneous impact abuse. In the author's experience, circular areas of granule loss are generally consistent with hail impact damage." (emphasis added)
>
> Despite these assertions, Mr. Ogden failed to follow his own methodology when examining the Plaintiff's roof. Specifically, Mr. Ogden determined multiple portions of the roof were damaged by hail, despite these portions not meeting the standards defined by his own methodology.

Dkt. No. 30 at 4-5 (footnotes omitted).

State Farm then points to "examples of instances where Mr. Ogden identified damage as 'hail' despite the damage not meeting his criteria for hail as 'radial/circular

areas of granule loss,' as established within his 'Protocol and Methodology for Hail and Wind Inspections.' Despite none of these photos matching Mr. Ogden's criteria of 'radial/circular areas of granule loss,' Mr. Ogden concludes that these areas represent hail damage and as a result, State Farm 'failed to account for all the damages [he] observed.'" *Id.* at 5-6 (footnote omitted).

State Farm further asserts that,

> not only do these examples not meet Mr. Ogden's criteria for hail damage, they all represent potential alternate causes of damage that Mr. Ogden admits, in his own report, can exist when he states: "Granule loss can also be the result of material and/or installation defects, natural weathering, foot traffic from maintenance, and miscellaneous impact abuse." However, Mr. Ogden then fails to differentiate any potential alternate cause – such as natural weathering – from his unsupported assertion that the granule loss is "hail" damage.
> 
> This is not the only example where Mr. Ogden has failed to follow his own methodology and protocols. As noted above, Mr. Ogden correctly states in his section on "Protocol and Methodology for Hail and Wind Inspections" that "in addition to evaluating the roof, the exterior of the structure should also be evaluated for distress and damages … [a]ny evidence of distress, such as burnish marks or indentations in metal materials, should be documented. Additionally, exposed condenser coil fins at air conditioning units are susceptible to impact damage and should be evaluated." Yet, combing through Mr. Ogden's expert report, no photos exist documenting damages to "exposed condenser coil fins at air conditioning units" or "indentations in metal materials." Thus, by failing to take such photos, Mr. Ogden failed to follow the very methodology he set forth in his report.
> 
> If Mr. Ogden had followed his own methodology, it would have required him to conclude that the granule loss he noted on the roof was not caused by hail. Although Mr. Ogden does take two (2) photos of the Plaintiff's air conditioner, as shown below, these photos show no damage to the "metal materials" and none were reported by Mr. Ogden in his report. Thus, despite Mr. Ogden stating in his report that "[a]ny evidence of distress, such as burnish marks or indentation in metal materials, should be documented," Mr. Ogden failed to document any such markings in his report. And according to his own methodology, the

absence of such marks is inconsistent with his conclusion that the granular loss on the roof was caused by hail. In fact, the lack of damage to the exposed condenser coil fins at air conditioning units logically supports some other cause of the granule loss, such as natural weathering, and rules out hail damage. But Mr. Ogden's report contains no analysis to support his conclusion of hail damage, even though his own methodology requires him to do so.

Even further, although Plaintiff had a metal, exterior satellite dish on the exterior of his property, which is susceptible to hail damage, Mr. Ogden did not document a single photo of Plaintiff's satellite dish. Once again, if Mr. Ogden were to follow his own methodology, the absence of hail damage to the satellite dish would be inconsistent with his conclusion that hail caused the granule loss on the roof. The truth of the matter is, Mr. Ogden did not document any indentations to the metal surfaces of the air conditioner or the satellite dish because no such metal indentations exist. As documented in the reports of Defendant's experts Brett Hall and Frank Griffin, no hail damage was found on the exterior air conditioner and satellite dish.

As evidenced by the expert reports of Frank Griffin and Brett Hall, and the declarations of each attached as Exhibit 6 and Exhibit 7, no hail damage was found on the metal surfaces of the satellite dish or the air conditioning units. Mr. Hall and Mr. Griffin followed the proper protocols Mr. Ogden, himself, failed to follow. If Mr. Ogden had followed these protocols and documented the lack of damage to these metal surfaces, that lack of damage would have contradicted his conclusion that hail caused the granule loss on the roof. To be reliable, an expert must rule out other potential causes of the granule loss, such as, for example, natural weathering. Mr. Ogden's report totally fails to rule out other potential causes, to explain why he fails to document and mention other evidence that contradicts his conclusion of hail damage.

Therefore, it is clear by his decision to disregard his own "Protocol and Methodology for Hail and Wind Inspections" that Mr. Ogden engaged in a results-driven investigation of the Plaintiffs' Property and ignored all contrary evidence that the damage he allegedly observed on the Plaintiffs' Property was not hail damage. Therefore, because Mr. Ogden failed to follow his own methodology, his opinions are unreliable, and thus irrelevant. If Mr. Ogden would have followed his own methodology, he could not logically have concluded that the granule loss was due to hail. He would have had to differentiate the granule loss from other potential causes and also explain the lack of damage to other things that should have had mail damage, if indeed a hail storm had

> caused the granule loss. As a result, his expert report is completely unreliable and should be struck.

Dkt. No. 54 at 6-9 (footnotes and graphics omitted); *see also id.* at 10 (asserting that, "because Mr. Ogden reached these demonstrably incorrect conclusions, his methodology and expert opinion are unreliable").

The Court cannot agree under Rule 702.

"Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at \*1 (cleaned up). Mr. Ogden states his methodology, which State Farm takes no issue with.

State Farm's assertions that Mr. Ogden made mistakes or fell short in applying that methodology – as to "radial/circular areas of granule loss," potential alternate causes, and the absence of photographs of air conditioning units or "indentations in metal materials" – amount to a challenge to the conclusions generated by the expert's methodology and not the reasonableness of the expert's stated approach. *Accord Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 196 (5th Cir. 2018) ("The district court also abused its discretion in excluding Sharma's testimony regarding his trend analyses. The district court found this testimony misleading because Sharma only plotted some of the data points from the testing of the pond, which indicated a steady decline moving away from Fairway View, but some of the omitted data points were inconsistent with this trend. We find that this critique of Sharma's method does not justify excluding the trend analysis testimony entirely. Rather, this question as to the basis for Sharma's opinion is fodder

for cross-examination, 'affect[s] the weight to be assigned that opinion rather than its admissibility[,] and should be left for the jury's consideration.'" (footnote omitted)).

A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). As to the metal surfaces of the satellite dish or the air conditioning units, State Farm's betrays its focus on Mr. Ogden's conclusions by pointing to its own experts' reports and urging the Court to exclude Mr. Ogden's testimony because Mr. Ogden did not come out where State Farm's experts do. Again, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

If State Farm is right in its assessment of Mr. Ogden's opinions, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up).

### II. Mr. Ogden's Reliance on Indisputably Wrong Facts

State Farm further argues that,

> not only did Mr. Ogden engage in a results-driven investigation and fail to follow his own methodology, but the results-driven investigation undertaken by Mr. Ogden reached conclusions that are demonstrably wrong. Specifically, in his expert report, Mr. Ogden concludes that a broken window (below) on Plaintiffs' Property was damaged as a result of a strike from a hail stone and he included the cost of the broken window in his estimate of what he believed State Farm owed….

> In his deposition, Mr. Ogden testified that because of how the window was struck and a "conversation [he] had with the homeowner," he determined that the window had been broken by a hail strike and should be included in the damages estimate. However, when the Plaintiff, Matthew Pate, was deposed, he testified that the broken window was not caused by hail, but was, in fact, caused by a rock he hit while mowing his lawn. Further, when asked if Mr. Ogden's opinion of what damaged the window was correct, Mr. Pate testified: "He was mistaken." As stated above, an expert opinion based upon "insufficient, erroneous information" fails the reliability standard. This broken window is but one example of Mr. Ogden's report being based on erroneous information.

Dkt. No. 30 at 9-10 (cleaned up).

Plaintiffs note that State Farm "argues that in a single instance [Mr.] Ogden misunderstood Plaintiff Mr. Pate's statement that a window was broken by hail, when it may have been broken in another way," but do not otherwise defend Mr. Ogden's opinion regarding this one broken window. Dkt. No. 32 at 13.

As explained above, the Court should exclude expert testimony where it is based on indisputably wrong or erroneous facts. And so it is with Mr. Ogden's opinion that a broken window on Plaintiffs' property was damaged by a strike from a hail stone and his inclusion of that broken window's cost in his estimate of what he believed State Farm owed.

The Court will exclude that opinion and portion of Mr. Ogden's overall estimate as unreliable under Rule 702.

But State Farm otherwise asserts only that "[t]his broken window is but one example of Mr. Ogden's report being based on erroneous information." Dkt. No. 30 at

10. And that is not enough to exclude any other opinion or portion of Mr. Ogden's expert testimony.

## Conclusion

For the reasons explained above, the Court grants in part and denies in part Defendant State Farm Lloyds's Opposed Motion to Strike Plaintiffs' Retained Testifying Expert, Michael Ogden [Dkt. No. 30] and excludes Mr. Ogden's opinion that a broken window on Plaintiffs' property was damaged as a result of a strike from a hail stone and his inclusion of that broken window's in his estimate of what he believed State Farm owed and any testimony of that opinion or the broken window's cost at trial.

SO ORDERED.

DATED: July 27, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE